**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

IN RE:                                                       CASE NO. 12-14820-PGH

HELDO GOMEZ, JR.,                                            CHAPTER 11

     Debtor.
_____/

HELDO GOMEZ, JR. M.D.,                                       Adv. No.

       Plaintiff,

v.

STUART B. KROST and
7300 SRV, LLC,

     Defendants.
_____/

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, TO**
**RECOVER DAMAGES, TO COMPEL TURNOVER**
**AND FOR OTHER RELATED RELIEF**

Plaintiff, Heldo Gomez, Jr., M.D. ("Gomez" or the "Debtor"), by and through his undersigned counsel, sues Defendants Stuart B. Krost ("Krost") and 7300 SRV, LLC ("7300"), and states as follows:

**JURISDICTION AND VENUE**

1.     This adversary proceeding is brought pursuant to Fed.R.Bankr.P. 7001, 11 U.S.C. §§ 542(a), 544(b) 548, and 550(a), Florida Statutes §§ 726.105, 726.106, Florida common law, seeking to recover money or property of the estate, to avoid and recover fraudulent transfers of the Debtor's property, and to recover money damages.

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

3.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(B),(E),(H),(K) and (O).

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1409(a) as the Debtor's Chapter 11 case is pending in this district.

## THE PARTIES

5.     Plaintiff, Heldo Gomez, Jr., M.D., the debtor-in-possession in the above-referenced Chapter 11 bankruptcy case, is a resident of the State of Florida.  This Chapter 11 case was filed on February 28, 2012 (the "Petition Date").

6.     Defendant Krost is a resident of Palm Beach County, Florida, and is a licensed physician.

7.     Defendant 7300 is a Florida limited liability company, which was formed in November, 2006.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      At all material times, Plaintiff, Heldo Gomez, Jr., M.D., was a licensed physician, whose medical practice is focused on neurosurgery, and who practices medicine with offices presently in Palm Beach County and St. Lucie County, Florida.

9.     At all material times, Defendant 7300 owned fee simple title to a medical building located at 7300 N.W. 5th Street, Plantation, Florida 33317 (the "Building").

10.     As of the events complained of herein, upon information and belief, Defendant Krost owned or controlled entities owning 100% of the membership interests in Defendant 7300 and was managing member. Upon information and belief, in 2013, Defendant Krost transferred his membership interests to Cindi Krost.

2

11.    Plaintiff Gomez and Defendant Krost were familiar with each other. In fact, Plaintiff Gomez periodically provided medical services to his patients at the Building.

12.    Sometime in 2010, the parties began negotiating and finally agreed that Plaintiff Gomez would acquire a 50% membership interest in Defendant 7300, which owned the Building, for the purchase price of $500,000. Upon the closing of the sale and purchase transaction envisioned by the parties, Plaintiff Gomez would own a 50% membership interest in Defendant 7300.

13.    In furtherance of such transaction, Plaintiff Gomez obtained a $500,000 loan from Enterprise Bank and eventually wired the funds to Defendant Krost on or about August 9, 2010. True and correct copies of the documentation evidencing the proceeds of the Enterprise Bank loan and the wire transfer of such funds is attached hereto as **Exhibit "A."**

14.    In furtherance of such transaction, Plaintiff Gomez and Defendant Krost both executed (i) an Operating Agreement, dated as August 1, 2010, setting forth, among other terms, the rights, status and obligations of each as members of Defendant 7300, and Plaintiff Gomez and Defendants Krost and 7300 executed (ii) a letter agreement, dated as of August 2, 2010, confirming and acknowledging Defendants obligation to transfer to Plaintiff Gomez a 50% membership interest in Defendant 7300.  True and correct copies of the Operating Agreement and letter agreement are attached hereto as **Exhibits "B"** and **"C,"** respectively.

15.    Notwithstanding that Plaintiff Gomez transferred to Defendant Krost the $500,000 and the execution of the Operating Agreement and letter agreement attached hereto as Exhibits "B" and "C," Defendants Krost and 7300 failed and refused to execute and deliver further documentation to evidence the actual transfer of the 50% membership interest or to in fact, transfer to Plaintiff Gomez the agreed upon 50% membership interest in Defendant 7300.

3

Furthermore, Defendants Krost and 7300, or either of them, failed and refused to return the $500,000.

16.    Despite due demand, Defendants Krost and 7300, or either of them, have continued to retain and have refused to return the $500,000 transferred by Plaintiff Gomez to the present.

17.    All conditions precedent to the prosecution of this action have occurred, been performed or have been waived.

**Count I**
**(Claim Against Defendants to Set Aside Fraudulent Transfer)**
**Under 11 U.S.C. §§ 548(a)(1)(B))**

18.    Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph.

19.    Plaintiff Gomez transferred, within two years of the Petition Date, money or property to or for the benefit of Defendants, or either of them, as fully set forth above, to wit, the $500,000.

20.    Defendants, or either of them, were the initial transferee and/or subsequent transferee of the $500,000, and/or the parties for whose benefit such transfers were made.

21.    The $500,000 was property of Plaintiff Gomez.

22.    Plaintiff Gomez Debtor received less than reasonably equivalent value and/or no value in exchange for the $500,000 transfer, being that the $500,000 was remitted by Plaintiff Gomez in respect of his contemplated purchase of a 50% membership interest in Defendant 7300, and in fact, Defendants failed and refused to transfer such interest.

4

23.    At the time of the transfer of the $500,000, Plaintiff Gomez was insolvent, or became insolvent as a result of such transfers or alternatively, intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

24.    The transfer of the $500,000 to Defendants Krost and 7300 may be avoided under 11 U.S.C. §§ 548(a)(1)(B) and recovered for the benefit of creditors pursuant to 11 U.S.C. § 550.

**WHEREFORE**, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300, or either of them, avoiding the transfer of the $500,000 to Defendants as set forth in this Count and awarding damages in his favor in the amount of the fraudulent transfer to Defendants, or either of them, pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.

### Count II
### (Claim Against Defendants to Set Aside Fraudulent Transfers
### Under the Florida Uniform Fraudulent Transfer Act (11 U.S.C. § 544(b),
### Florida Statute § 726.105(1)(b))

25.    Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17, as if said allegations were fully set forth in this paragraph.

26.    Plaintiff Gomez transferred, within four years of the Petition Date, money or property to or for the benefit of Defendants Krost and 7300, or either of them, as fully set forth above, to wit, the $500,000.

27.    Defendants Krost and 7300, or either of them, were the initial transferee and/or subsequent transferee of the $500,000, and/or the parties for whose benefit such transfers were made.

28.    The $500,000 was property of Plaintiff Gomez.

29.    Plaintiff Gomez received less than reasonably equivalent value and/or no value in exchange for the $500,000 transfer, being that the $500,000 was remitted by Plaintiff Gomez in

respect of his contemplated purchase of a 50% membership interest in Defendant 7300, and in fact, Defendants failed and refused to transfer such interest.

30.    At the time of transfer, Plaintiff Gomez intended to incur or believed or reasonably should have believed that he would incur debts that would be beyond his ability to pay as they became due.

31.    The transfer to Defendants Krost and 7300, or either of them, of the $500,000 was fraudulent as to present and future creditors whose claims arose before or after the transfer occurred and Plaintiff Gomez may avoid the transfer pursuant to Florida Statutes § 726.108 and 11 U.S.C. § 544(b).

32.    Plaintiff Gomez may recover judgment against Defendants Krost and 7300 for the value of the transfer pursuant to Florida Statutes § 726.109(2) and 11 U.S.C. § 550.

**WHEREFORE**, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300, avoiding the transfers to said Defendants, or either of them, as set forth in this Count and awarding damages in his favor in the amount of such fraudulent transfer to Defendants, plus pre- and post-judgment interest, and for such other and further relief as this Court deems just and proper.

## Count III
### (Claim Against Defendants to Set Aside Fraudulent Transfers Under the Florida Uniform Fraudulent Transfer Act (11 U.S.C. § 544(b), Florida Statutes § 726.106(1))

33.    Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph.

34.    Plaintiff Gomez transferred, within four years of the Petition Date, money or property to or for the benefit of Defendants Krost and 7300, or either of them, as fully set forth above, to wit, the $500,000.

35.    Defendants Krost and 7300, or either of them, were the initial transferee and/or subsequent transferee of the $500,000, and/or the parties for whose benefit such transfers were made.

36.    The $500,000 was property of Plaintiff Gomez.

37.    Plaintiff Gomez Debtor received less than reasonably equivalent value and/or no value in exchange for the $500,000 transfer, being that the $500,000 was remitted by Plaintiff Gomez in respect of his contemplated purchase of a 50% membership interest in Defendant 7300, and in fact, Defendants failed and refused to transfer such interest.

38.    At the time of the transfer, Plaintiff Gomez was insolvent, or became insolvent as a result of such transfer or alternatively, intended to incur or believed he would incur debts that would be beyond his ability to pay as such debts matured.

39.    The transfer to Defendants Krost and 7300, or either of them, was fraudulent as to present and future creditors whose claims rose before or after the transfer occurred.

40.    Plaintiff Gomez may avoid the transfer pursuant to Florida Statutes § 726.108 and 11 U.S.C. § 544(b).

41.    Plaintiff Gomez may recover judgment against Defendants Krost and 7300 for the value of such transfer pursuant to Florida Statutes § 726.109(2) and 11 U.S.C. § 550.

**WHEREFORE**, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300, avoiding the transfer to said Defendants, or either of them,  as set forth in this Count and awarding damages in his favor in the amount of such fraudulent transfer to Defendants, or either of them, plus pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.

## Count IV
## <u>(Conversion)</u>

42.     Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph.

43.     This is a count against Defendants Krost and 7300 for recovery of money damages arising from Defendants' conversion of Plaintiff Gomez' property.

44.     The $500,000 which Plaintiff Gomez transferred to or for the benefit of Defendants, or either of them, in August, 2010 was specific and identifiable, and remained property of Plaintiff Gomez until all conditions precedent occurred, to wit, the transfer of a 50% membership interest in Defendant 7300 to Plaintiff Gomez.

45.     Despite never transferring the 50% membership interest in Defendant 7300 to Plaintiff Gomez or having an entitlement to the $500,000, Defendants, or either of them, improperly exercised dominion and control over the $500,000 to the exclusion of Plaintiff Gomez, and have failed and refused to return the $500,000.

46.     Defendants, or either of them, knowingly and without justification converted the property of Plaintiff Gomez.

47.     As a result of Defendants' conversion, Plaintiff Gomez has been damaged.

**WHEREFORE**, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300, for the damages arising from Defendants' conversion, punitive damages, if appropriate, plus pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.

8

### Count V
### Reservation of  Cause of Action for Civil Theft Against Defendants

Plaintiff Gomez provides notice of his intention to set forth a cause of action for Civil Theft against Defendants pursuant to Fla. Stat. § 772.11.

### Count VI
### Breach of Contract

48.     Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph.

49.     This is a count against Defendants Krost and 7300 for breach of contract.

50.     Pursuant to the letter agreement attached hereto as Exhibit "C," Defendants Krost and 7300 agreed to transfer a 50% membership interest in Defendant 7300 to Plaintiff Gomez in consideration of the purchase price of $500,000.

51.     In breach of such agreement, Defendants Krost and 7300 failed and refused to transfer such 50% membership interest in Defendant 7300 to Plaintiff Gomez, notwithstanding Plaintiff Gomez' remittance of the $500,000.

52.     As a result of such breach, Plaintiff Gomez has been damaged.

**WHEREFORE**, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300, for the damages arising from Defendants breach of contract, plus pre- and post- judgment interest, costs and for such other and further relief as this Court deems just and proper.

### Count VII
### (Action for Fraudulent Inducement)

53.     Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph.

54.     This is a count against Defendants Krost and 7300 for fraudulent inducement.

9

55.     In order to induce Plaintiff Gomez to transfer $500,000, Defendants Krost and 7300 represented to Plaintiff Gomez that in return for such transfer, Plaintiff Gomez would receive a 50% membership and ownership interest in Defendant 7300 and thereby effectively own one half of the Building.

56.     Such representation was both false and knowingly false on the part of Defendants Krost and 7300, who knew that Plaintiff Gomez would rely on such material false representation to his detriment.

57.     At the time of making such representation to Plaintiff Gomez, Defendants had no intention of transferring the 50% membership interest to Plaintiff Gomez.

58.     Plaintiff Gomez relied on the false representation made by Defendants and has incurred damages as a direct result of such reliance.

**WHEREFORE**, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300 for the damages arising from Defendants' fraud in the inducement, punitive damages, if appropriate, plus pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.

### Count VIII
### (Action for Unjust Enrichment)

59.     Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph

60.     This is a count against Defendants Krost and 7300 for unjust enrichment.

61.     Plaintiff Gomez conferred a benefit upon Defendants, or either of them, by transferring to Defendants the sum of $500,000, in respect of Plaintiff Gomez' contemplated purchase of a 50% membership interest in Defendant 7300.

62.     Defendants Krost and 7300 had knowledge of such benefit and the subject transfer.

63.     The Defendants, or either of them, accepted and retained such benefit.

64.     Defendants Krost and 7300 have knowingly and without justification failed and refused to turn over the $500,000 which was transferred by Plaintiff Gomez and under the circumstances, it would be inequitable for Defendants to retain the benefit of the $500,000 without paying or transferring fair value for such benefit.

WHEREFORE, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants Krost and 7300 for the damages arising from Defendants breach of contract, plus pre- and post- judgment interest, costs and for such other and further relief as this Court deems just and proper.

### Count IX
### (Action for Turnover Pursuant to 11 U.S.C. § 542(a))

65.     Plaintiff Gomez, repeats and re-alleges the allegations set forth in paragraphs 1 through 17 above, as if said allegations were fully set forth in this paragraph.

66.     Defendants Krost and 7300, or either of them,  retain the $500,000 which Plaintiff Gomez transferred to them, which transfer constituted specific and identifiable property.

67.     Defendants Krost and 7300 have knowingly and without justification failed and refused to turn over the $500,000 which was transferred by Plaintiff Gomez..

WHEREFORE, Plaintiff, Heldo Gomez, Jr., M.D., respectfully requests that this Court enter judgment in his favor and against Defendants directing Defendants to turn over Plaintiff Gomez' $500,000, plus awarding and pre- judgment interest on such proceeds, costs and for such other and further relief as this Court deems just and proper.

11

**DATED this 26th day of February, 2014**.

Respectfully submitted,

**RICE PUGATCH ROBINSON & SCHILLER, P.A.**
Attorneys for Heldo Gomez, Jr., M.D.
101 NE 3rd Street, Suite 1800
Fort Lauderdale, Florida 33301
Telephone:    (954) 462-8000
Facsimile:    (954) 462-4300


By:/s/ *Kenneth B. Robinson*
    **KENNETH B. ROBINSON**
    Florida Bar No. 559474
    **CRAIG A. PUGATCH**
    Florida Bar No. 653381


J:\WPDocs\4946 Dr. Heldo Gomez\Gomez v Nova 1- 005\Adversary Complaint - Stuart Krost v3.docx

# EXHIBIT "A"

From:1st United Bank                    5616246894              02/25/2014 10:51       #955 P.001/001



**ENTERPRISE BANK** OF FLORIDA

*Loan Disbursement*

Date:  6/08/10                    012764

REMITTER        LOAN PROCEEDS

Branch:     0090

**PAY**        EXACTLY **497,699 AND 80/100 DOLLARS                    $497,699.80
**TO THE**
**ORDER OF** HELDO J. GOMEZ, JR.  ***

⑈00000 ⑆2764⑈  ⑆067013852⑈  800151⑈

Check: 12764 Amount: $497,699.80 Date: 6/9/2010
Run: 1, Batch: 4, Seq: 9

Check: 12764 Amount: $497,699.80 Date: 6/9/2010
Run: 1, Batch: 4, Seq: 9

##XXH1768DPCSTM          08091000212508410

Statement of Account

Last statement: July 09, 2010
This statement: August 09, 2010
Total days in statement period: 31

021-250841-0

Direct inquiries to:
561-688-9400

HELDO GOMEZ JR                    Sabadell United Bank, N.A.
SUITE 105                         1645 Palm Beach Lakes Blvd
4290 PROFESSIONAL CENTER          West Palm Beach FL 33401-2215
PALM BEACH GARDENS FL 33410

                                                          5

Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Personal Checking | 021-250841-0 | $978,887.15 |

REMINDER-FOR UP-TO-DATE INFORMATION ON YOUR ACCOUNT BALANCES AND
TRANSACTION ACTIVITY, AND FOR ATM AND DEBIT CARDHOLDER SERVICES JUST
CALL EASY ACCESS 24, OUR TELEPHONE BANKING SYSTEM, AT 1-800-944-9223.

Personal Checking

Account number
021-250841-0        Beginning balance    $1,254,417.77
                    Total additions       $ 452,023.48    Total subtractions    $-727,554.10
5 Enclosures

| Number | Date | Amount | Control |
|---|---|---|---|
| 421 | 07-27 | 25,000.00 | 00001000003068 |
| 422 | 07-22 | 49,521.00 | 00001000003151 |
| 423 | 07-22 | 25,000.00 | 00001000004275 |
| 424 | 08-05 | 20,000.00 | 00001000000213 |
| 425 | 08-05 | 47,854.00 | 00001000004617 |

| Date | Description | Control number | Additions | Subtractions |
|---|---|---|---|---|
| 07-15 | #Deposit | 00000016000339 | 227,703.93 | |
| 07-15 | #ACH Debit | 31201465153605 | | -4,578.63 |
| | AMERICAN EXPRESS ELEC REMIT | | | |
| | 100715 100714069994644 | | | |
| 07-15 | #Deposit Correction | 00000999000113 | | -55,000.00 |
| 07-30 | #Deposit | 00000016000565 | 199,819.55 | |

                                                          Page 1

021-250841-0          PAGE

##XXH1768DPCSTM        08091000212508410

August 09, 2010
021-250841-0

| Date | Description | Control number | Additions | Subtractions |
|------|-------------|----------------|-----------|--------------|
| 08-04 | #Deposit | 00000016000228 | 24,500.00 | |
| 08-05 | #ACH Debit<br>AMERICAN EXPRESS ELEC REMIT<br>100805 | 31201465735130 | | -571.97 |
| 08-09 | #Outgoing Wire Trsfr<br>OT TO:STUART KROST | 75000809115614 | | -500,000.00 |
| 08-09 | #Service Charge<br>OUTGOING WIRE TRSF | 75000809115614 | | -25.00 |
| 08-09 | #Service Charge | 00000000000000 | | -3.50 |

Following is a description of the service charge for the period
07/10/10 to 08/09/10.

Charges
    Deposit Correction                                    3.50
Total
    Total Service Charge                                  3.50

Daily balances

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 07-09 | 1,254,417.77 | 07-27 | 1,323,022.07 | 08-05 | 1,478,915.65 |
| 07-15 | 1,422,543.07 | 07-30 | 1,522,841.62 | 08-09 | 978,887.15 |
| 07-22 | 1,348,022.07 | 08-04 | 1,547,341.62 | | |

Overdraft/Insufficient Funds Fees

|  | Total For This<br>Statement Period | Total For This<br>Calendar Year |
|--|-----------------------------------|--------------------------------|
| Total Insufficient Funds<br>(returned items) fees | $0.00 | $0.00 |
| Total Overdraft (paid items) fees | $0.00 | $0.00 |

Page 2

EXHIBIT "B"

## 7300 SRV, LLC.
## OPERATING AGREEMENT

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT (the "Agreement") entered into this __1__ day of __August__, 2010 by and between 7300 SRV, LLC, a Florida limited liability company, referred to as "LLC", and STUART B. KROST, M.D., referred to as "Krost" and HELDO GOMEZ, JR., M.D., referred to as "Gomez" and collectively as "Members" or individually as a "Member".

## W I T N E S S E T H:

WHEREAS, the LLC was formed pursuant to its Articles of Organization filed with the Florida Secretary of State and accepted for recording on the 15th day of November 2006: and

WHEREAS, Gomez became a Member by acquired his 50% percent Membership Interest in the LLC from Krost; and

WHEREAS, the LLC heretofore acquired and holds title to its assets, including primarily a Plantation Florida office building; and

WHEREAS, the parties and the LLC desire to set forth the terms and conditions of the understanding between them; and

WHEREAS, the LLC intends to be taxable as a partnership for federal income tax purposes; and

FOR AND IN CONSIDERATION of the foregoing recitals which are hereby incorporated as a part of this Agreement, the mutual covenants and agreements contained herein, and other good and valuable consideration, the parties agree as follows:

## SECTION 1
## DEFINED TERMS

1.1.    **Defined Terms.** The defined terms used in this Agreement shall have the meanings specified below or in the Section in which they first appear.

**Act** means the Florida Limited Liability Act, as amended, F.S. §§ 608.401 to 608.705 or any corresponding provision of succeeding law.

**Adjusted Capital Contribution** means, as of any day, a Member's Capital Contributions adjusted as follows:

(a)     Increased by the amount of the LLC liabilities which, in connection with distributions to a Member, are assumed by such Member or are secured by LLC property distributed to such Member; and

(b)     Increased by an amount actually paid by such Member to any LLC lender pursuant to any Agreement by which such Member assumes a LLC liability; and

(c)     Reduced by an amount of cash and the value of any LLC property distributed to such Member pursuant to Section 6 hereof; and the amount of liabilities a Member assumes by the LLC or which are secured by any property contributed by the Member to the LLC.

**Agreement** means the Limited Liability Company Operating Agreement and all exhibits attached and made a part hereof.

**Approval of the Members** shall mean the consent or approval of all of the Members.

**Capital Account** means with respect to a Member, the Capital Account established, maintained and adjusted for a Member in accordance with Treasury Regulation §1.704-1(b)(2)(iv) or an other applicable provision of the Internal Revenue Code of 1986 and promulgated Treasury Regulations.

**Code** means the Internal Revenue Code of 1986, as amended, or any corresponding provision of a succeeding law.

**Fiscal Year** means the fiscal year of the LLC as set forth in Section 2.7 herein.

**LLC** means this limited liability company formed pursuant to its Articles of Organization filed with the Florida Secretary of State.

**Majority of the Managing Members** means a simple majority (i.e., more than one half) of the interests of Managing Members of the LLC.

**Managing Member(s)** means those Members responsible for the operation and management of the LLC. At the execution of the agreement, the Managing Members are STUART B. KROST and HELDO GOMEZ, JR.

**Member(s)** means a Person that has a Membership Interest in the LLC.

**Membership Interest or Member's Interest** means and shall have that definition as provided in Florida Statute §608.402(23).

**Person** means an individual, partnership, corporation, association, trust, limited liability Company, or other legal entity and its heirs, Personal Representatives, administrators, legal representative, successors, and assigns where the context requires.

**Profits and Losses** means for each Fiscal Year or an other period an amount equal to the LLC's taxable income or loss for such Fiscal Year or period, as determined in accordance with

2

Code §703(a) (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code §703(a)(1) shall be included in taxable income or loss), but computed with the following adjustments: (i) any income of the LLC that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition of Profits and Losses shall be added to such taxable income or loss; and (ii) any expenditures of the LLC described in Code §705(a)(2)(B) or treated as Code §705(a)(2)(B) expenditures pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(i) and not otherwise taken into account in computing Profits and Losses pursuant to this definition, shall be subtracted from such taxable income or loss.[

**Transferee** means when a Member transfers all or some portion of his, her or its Membership Interest in accordance with the terms of this Agreement,.

**Treasury Regulations** means the regulations promulgated by the United States Treasury Department pertaining to income tax, as amended, and any successor provision.

## SECTION 2
## FORMATION AND PURPOSES

2.1    **Formation.** The Members hereby:

(a)    Acknowledge that the LLC, a limited liability company, was heretofore formed by virtue of the Articles of Organization filed on November 15, 2006.

(b)    Confirm and agree to their status as Members upon the terms and conditions set forth in this agreement.

(c)    Execute and adopt this Agreement as the Operating Agreement of the LLC, pursuant to the meaning of §608.402(24) of the Act.

2.2.    **Name and Principal Office.** The name of the limited liability company is 7300 SRV, LLC. The initial principal place of office of the LLC shall be in Plantation, Broward County, Florida or such other offices as the Members may deem advisable.

2.3.    **Governing Law.** This Agreement and all questions with respect to the rights and obligations of the Members, the construction, enforcement and interpretation hereof, and the formation, administration and termination of the LLC shall be governed by the applicable laws of the State of Florida.

2.4.    **Defined Terms.** Except as otherwise specified or when the context may otherwise require, all capitalized terms used in this Agreement shall have the meanings specified in Section 1 of this Agreement or the Section where such capitalized term is first defined.

3



2.5.    **Purpose.**   The LLC is organized to operate and function as a for profit organization to acquire, own, hold, manage, lease or dispose of that certain real property located at 7300 N.W. 5th Street, Plantation, Florida 33317 or such other replacement properties.

2.6.    **Term of the LLC.**   The term of the LLC commenced upon filing of Articles of Organization with the Florida Department of State, and shall have perpetual existence unless sooner terminated as provided in this Agreement or the Act.

2.7.    **Tax Year and Accounting Matters.**   The Fiscal Year of the LLC shall be a calendar year. The LLC shall adopt the Cash Receipt and Disbursements Method of accounting as determined by the Managing Members. The Managing Members shall be responsible for all accounting matters of the LLC.

2.8.    **Tax Elections.**   The Members agree the LLC shall be taxed as a Partnership for federal income tax purposes, and the Members shall take any and all action necessary to effectuate Partnership tax treatment.

2.9.    **Tax Matters Member.**   The Tax Matters Member of the LLC, as that term is used in Subchapter C of Chapter 1 of the Code, will take such actions as may be necessary, appropriate or convenient to effect the designation of the Tax Matters Member.   At the commencement of the LLC, STUART B. KROST shall be the Tax Matters Member. The Tax Matters Member shall have full and unlimited discretion to perform or fail to perform any actions or to make any decisions which under the Code may be made by a Tax Matters Member. However, in performing such duties, the Tax Matters Member shall have a fiduciary duty to act in the best interest of the LLC and all its Members. Furthermore, the Tax Matter Member shall not have the authority to change the LLC's tax status election without consent of all Managing Members.

**SECTION 3**
**MEMBERS – STATUS, RIGHTS, AND OBLIGATIONS**

3.1    **Members.** There shall be only one (1) class of Members:

(a)    The Member[s] shall take no part in the management, conduct and operation of the LLC and have no right, power or authority to act for or to bind the LLC. Except as otherwise specifically set forth herein, a Member shall have the right only to demand or receive cash in return for his, her or its Capital Contribution or a distribution of revenue.

(b)    The Managing Members have the exclusive power and authority to act on behalf of the LLC in its name, to manage, control, administer and operate its affairs and to do or cause to be done anything that they deem reasonably necessary or advisable in furtherance of

4

the LLC. They have the power and authority to carry on and conduct the LLC pursuant to its purpose; borrow money; issue promissory notes and other debt instruments in any amount whether secured or unsecured; employ all types of agents, including attorneys and accountants, as deemed appropriate; buy or otherwise obtain the use of any type of other property that may be convenient or advisable; sue and be sued, prosecute and defend in the LLC name; and sell and convey any LLC assets for consideration.

(c)     Additional Members of the LLC may be admitted from time to time upon such terms and conditions as approved by all the Members in accordance with the provisions of this Agreement.

3.2.    **Powers of Members.**   Members shall have the limited power and authority conferred upon them pursuant to the Act and this Agreement.  The Members shall have the right to attend all meetings of the Managing Members and Members.  The management of the LLC shall be reserved only to the Managing Members.

3.3     **Voting by Members.**   Except as otherwise provided herein or the Act, only the Managing Members of the LLC shall vote on matters pertaining to the operation, management and function of the LLC. A majority of the Managing Members, if there shall be more than two, shall be necessary to vote on these issues, except all the Managing Members must unanimously agree:

(a)     On the use of any money belonging to the LLC or pledge its credit or refinance any debt except in the ordinary course of business.

(b)     To release or discharge any debtor obligation due the LLC without receiving the full amount thereof.

(c)     Permit or cause to be permitted any act whereby the LLC may be subject to garnishment, seizure or forfeiture.

(d)     Cause the LLC to become a guarantor, surety, and endorser or give any note to any person or entity.

(e)     Recapitalize, merge, liquidate, sell substantially all of its assets or issue additional Membership Interests in the LLC.

3.4.    **Consent of Managing Members in Lieu of Meeting.**   Unless otherwise provided in this Agreement, no action may be taken at any meeting of the Managing Members without giving prior notice to all the Managing Members. All the Managing Members must consent in writing for any action taken by the Managing Members without giving notice and convening a general or special meeting.  If the Managing Members consent to taking any action

5        08-01-10

without a meeting, the written consent shall bear the signature of each Managing Member, date and shall be filed in the Minutes of the meetings of the Managing Members of the LLC.

      3.5.    **Meetings Notice.** Regular or special meetings of the Managing Members shall be held from time to time: (a) at such place within State of Florida at such time as shall be approved by the Managing Members and (b) with at least ten (10) days written notice of the time, date and location of meeting given to each Managing Member.

      3.6.    **Waiver of Notice by Managing Members** Whenever any notice whatsoever is required to be given to any Managing Members of the LLC under this Agreement or any provision of law, a waiver thereof, signed at any time, whether before or after the time of meeting, by the Managing Member entitled to such notice shall be deemed equivalent to the giving of such notice. The attendance of a Managing Member at a meeting shall constitute a waiver of notice of such meeting, except where a Managing Member attends a meeting and objects at the beginning thereof to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any meeting of the Managing Members need be specified in any waiver of notice of such meeting.

      3.7.    **Quorum.** At all meetings of the Managing Members, a majority of the Managing Members, if there shall be more than two, shall constitute a quorum for the transaction of business. Although less than a quorum, a majority of the Managing Members present at a meeting may adjourn the meeting, from time to time without further notice, until a quorum shall be present; provided, however, that any Managing Members absent from the adjourned meeting shall be provided written notice of such adjournment.

      3.8.    **Manner of Acting.** At all meetings of the Managing Members, Managing Members shall be entitled to one vote per Membership Interest. Except as otherwise provided by law, a Managing Member may not vote by proxy unless his proxy expressly states the meeting is to take effect, the name of the person to whom the proxy is being provided, and it must be dated and signed.

      3.9.    **Conduct of Meetings.** A designee of the Managing Members shall call meetings to order and shall act as chair of the meeting. A second designee of the Managing Members shall record all actions at such meeting, which shall be maintained in an LLC minute book.

      3.10.    **Participation.** Managing Members may participate in any meeting either in person or by means of a conference telephone or similar communications equipment through which all persons participating in the meeting can hear each other. Participation in a meeting pursuant to this Section 3.10 shall constitute presence in person at the meeting.

      *f 06-01-10*

## SECTION 4
## MANAGEMENT OF THE LLC

4.1.    **Management by Managing Members.** The management of the LLC is vested exclusively in the Managing Members. The Managing Members shall have the discretion, authority and power to make all decisions or take the following actions by the majority of the Managing Members in each instance:

(a)    The operation, management and function of the LLC.

(b)    The acquisition of any material assets and/or property by the LLC.

(c)    The sale, assignment, transfer, encumbrance or other disposition of all or any portion of the principal asset of the LLC.

(d)    The approval of any expenditure, the incurrence of any obligation or the entering into of any contract involving a sum in excess of Ten Thousand Dollars ($10,000.00).

(e)    The approval of any contract or arrangement with any third party or affiliate of a third party.

(f)    The making of distributions to Members and the creation or use of LLC reserves (other than as provided in the Operating Budget Approved by the Members).

(g)    The negotiation of, or the entering into, any agreement for the employment of workers and licensed professionals and purchase of any material assets by the LLC.

(h)    The decision to pursue, or not to pursue, any business opportunity; and

(i)    The taking of any other action or making of any other decision, which, under the terms of this Agreement, is required to be approved by the Members.

(j)    However, with respect to a change in the LLC's tax status election, all Managing Members must give their consent.

4.2.    **Conflicts of Interest.** No contract or other transaction between the LLC or one or more of its Managing Members, or between the LLC or any Affiliate of a Managing Member, or between the LLC and any other corporation, partnership, association or other organization in which one or more of the Managing Members has a financial interest shall be void or voidable or in any way affected solely for this reason, or solely because such Managing Member is present at or participates in the meeting which authorized the contract or transaction, provided the Managing Member discloses the conflict of interest at a special or general meeting of the Managing Members which is voted upon and approved by all the Managing Members.

4.3.    **Third Party Reliance.** Third parties dealing with the LLC shall be entitled to rely conclusively upon the power and authority of the Managing Members as set forth herein.

7

 08-01-10

4.4.    **Compensation and Expenses.**  No Managing Member or Member who performs services for the LLC shall be entitled to compensation for such services or be entitled to any reimbursement of any general overhead expenses incurred by the Managing Member unless the payment is made pursuant to a written employment agreement with the Managing Members or approved by the Managing Members.

4.5.    **Removal of a Managing Member.**  The Members owning more than eighty percent (80%) of the Membership Interest shall have the right, for "cause" exercisable by written notice given to the Managing Members and all the Members, to remove a Managing Member, provided, however, that no vote shall be taken on the removable of a Managing Member unless it shall be for the purpose of bankruptcy, fraud, bad faith or gross negligence.  If the Managing Member contests the validity of such removal, such removal shall not become effective unless and until a court of competent jurisdiction, including any court in which an appeal may be taken, shall have finally determined that cause for such removal has been established.

## SECTION 5
## CAPITAL CONTRIBUTIONS

5.1.    **Capital Contributions.**    The Members agree that their respective Member's Interest in the LLC shall be as follows, and Profits and Losses shall be distributed accordingly:

| Members | Percentage |
| --- | --- |
| Stuart B. Krost | 50% |
| Heldo Gomez, Jr. | 50% |
| Total: | 100% |

(a)    **Managing Members**. The Members agree the Managing Members are:

STUART B. KROST

HELDO GOMEZ, JR.

(b)    **Additions.**  No Member shall be entitled or required to make additional Capital Contributions to the LLC without first obtaining the written consent of all the Members.

(c)    **Member Loans.**    Member Loans, if any, to the LLC will not be approved without the written consent of all the Members.  Notwithstanding the foregoing, a Managing Member may, in his or her sole discretion, loan funds to the LLC if the Managing Member determines the funds are necessary to operate the LLC.  The LLC shall execute and

8    

deliver to the Managing Member[s] a promissory note in the principal amount of the loan bearing interest at a rate equal to the prime rate declared by the Wall Street Journal on that date. The Promissory Note shall be immediately due and payable twelve (12) months from the payment of the loan amount.

5.2.    **No Interest upon Contributions.**    No Member shall be entitled to interest on his, her or its Capital Contributions.

5.3.    **Capital Accounts.**

(a)    Each Member's Capital Account shall be credited with the amounts of such Member's Capital Contributions made after the date of this Agreement, such Member's undistributed share of Profits, and any items in the nature of income or gain which are specially allocated to the Member pursuant to this Section 5;

(b)    Each Member's Capital Account shall be charged with the amounts of cash and the carrying value of any property distributed by the LLC to such Member pursuant to any provision of this agreement, such Member's distributive share of Losses and any items in the nature of expenses or losses which are specially allocated to the Member pursuant to this Section 5;

(c) If all or a portion of a Member's Interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the Transferred Member Interest, provided the transferee executes this Agreement as amended from time to time.

(d) Profits and Losses to the Members shall be distributed or allocated equally to the Members regardless of the Capital Account of each Member.

5.4.    **Capital Account Deficit.**    Except as provided in this Agreement or the Act, no Member shall have any liability or obligation to restore a negative or deficit balance in his, her or its Capital Account.

5.5.    **Return of Capital Contributions.**    No Member shall be entitled to withdraw any part of his, her or its Capital Contributions or Capital Account or to receive any distribution from the LLC except as specifically provided in this Agreement.

5.6.    **Member Services.**    Services by any Member to the LLC shall not be considered Capital Contributions.

5.7.    **Limited Liability.** Except as provided in this Agreement, no Member shall be required to contribute or lend any money or property to the LLC.

5.8    **Membership Interest.**    Each Member's Membership Interest in the LLC is as provided in paragraph 5.1.

9



5.9.   **Not for Benefit of Creditors.**   The provisions of this Section 5 are not intended to be for the benefit of any creditor or other person (other than a Member in his, her or its capacity as Member) to whom any debts, liabilities, or obligations are owed by (or who otherwise has any claim against) the LLC or any of the Members, and no such creditor or other person shall obtain any right under any such provisions or shall by reason of any such provisions make any claim in respect to any debt, liability, obligation, or claim against the LLC or any of the Members.

5.10.   **Formation Costs.**   All reasonable costs and expenses incurred with respect to the formation of the LLC shall be borne by the LLC.

5.11.   **Section 754 Adjustments**.   To the extent an adjustment to the adjusted tax basis of an asset of the LLC, pursuant to Code §734(b) or Code §743(b) is required, Treas. Reg. §1.704-1(b)(2)(IV)(m)(2) or §1.704-1(b)(2)(IV)(m)(4) is to be taken into account in determining capital accounts as a result of a distribution to a Member in complete liquidation of his, her or its Membership Interest in the LLC. The amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in accordance with their Membership Unit in the LLC in the event Treas. Reg. §1.704-1(b)(2)(IV)(m)(2) applies, or to whom such distribution was made in the event Treas. Reg. §1.704-1(b)(2)(IV)(m)(4) applies.

### SECTION 6
### DISTRIBUTIONS OF PROFITS AND LOSSES

6.1.   **Distribution of Profits and Losses.**   Before a distribution of Profit is made to a Member, all reserves and operating expenses of the LLC shall be paid or reserved as determined by the Managing Members. At the close of each fiscal year distributions of Profits and Losses shall be distributed or allocated to the Members in the same proportions and amounts as provided for in paragraph 5.1 hereof.

### SECTION 7
### TERMINATION AND DISSOLUTION OF THE LLC

7.1.   **Events of Dissolution.**   The LLC shall be dissolved upon the occurrence of any one of the following events:

    (a)   The unanimous written consent of the Members;

    (b)   The sale, transfer or assignment of substantially all of assets of the LLC;

10    08-01-10

(c)      (i) The adjudication of the LLC as insolvent within the meaning of insolvency laws in either bankruptcy or equity proceedings; (ii) the filing of an involuntary petition in bankruptcy against the LLC (which is not dismissed within 90 days); (iii) the filing against the LLC of a petition for reorganization under the Federal Bankruptcy Code or any state statute (which is not dismissed within 90 days); (iv) a general assignment by the LLC for the benefit of creditors; (v) the voluntary claim (by the LLC) that it is insolvent under any provisions of the Bankruptcy Code (or any state insolvency statutes); or (vi) the appointment for the LLC of a temporary or permanent receiver, trustee, custodian, and such receiver, trustee or custodian is not dismissed within 90 days; and

(d)      As otherwise required by law.

## SECTION 8
## ADMINISTRATIVE PROVISIONS

8.1.   **Registered Agent.**   The Managing Members shall have the power, on behalf of the LLC, to designate, where required, a registered agent (or other agent for receipt of service of process) in each state the LLC transacts business and to designate, to the extent required, an office, place of business, or mailing address within or without that state.

8.2.   **Bank Accounts: Signature Authority.**   All the funds of the LLC shall be deposited in an account or accounts of any bank(s) or other financial institution(s) in the name of the LLC which are participants in federal insurance programs selected by the Managing Members. The Managing Members agree that either Managing Member shall have authority to sign checks and other documents on behalf of the LLC, subject to the approval requirements of Sections 3.3 and 4.1.

8.3.   **Books and Records.**   At all times during the term of the LLC, the Managing Members shall keep, or cause to be kept, full and faithful books of account, records, and supporting documents, which shall reflect, completely, accurately, and in reasonable detail, each transaction of the LLC. The books of account shall be maintained and tax returns prepared and filed in accordance with the method of accounting determined by the Managing Members. Each Managing Member shall receive a copy of the signed state and federal income tax return filed each year. The cost for preparation of all state and federal tax returns shall be borne by the LLC. The books of account, records, and all documents and other writings of the LLC shall be kept and maintained either at the principal office of the LLC or at the principal office of the Managing Members, as the Managing Members shall determine. Each Member or his, her or its designated representative shall, upon reasonable notice to the Managing Members, have complete access to

11      *ff ob-01-10*

all financial books, records, and documents during reasonable business hours and may inspect and make copies of any of them at his, her or its own expense. Upon the written request of a Member, the Managing Members shall have the financial statements prepared at the cost of the LLC. The Members shall cause the LLC to keep at its principal office the following:

(a)     A current list of the full name and last known business address of each Member;

(b)     A copy of the Articles of Organization and all Articles of Amendment thereto:

(c)     Copies of the LLC' s federal, state, and local income tax returns and reports, if any, for the three most recent years;

(d)     Copies of this Agreement, and all amendments thereto; and

(e)     Any other financial information or records required by the Act.

8.4.    **Further Assurances.**     All the Members will execute such certificates and documents, and the Managing Members will file, record and publish such certificates and documents, as may be necessary or appropriate to comply with the requirements for the formation and operation of a LLC under the Act.

## SECTION 9
## TRANSFER OF MEMBERSHIP INTERESTS

9.1     **Requirement for Transfer**. Unless consented in writing by all the Members, no Member shall sell, exchange, assign, pledge, mortgage, hypothecate, donate, encumber or transfer or permit to be transferred, voluntarily or involuntarily, including, without limitation, a transfer incident to divorce or separation, any of his, her or its Membership Interests of the LLC to any person, partnership, firm, association, corporation, trust, individual or entity. A purported sale or transfer of any Membership Interest not in conformity with this Agreement shall be null and void and of no effect. Each Member shall hold his, her or its Membership Interest in his, her or its own name which may only be held jointly with his or her spouse so long as the spouse executes a written joinder expressly agreeing to be bound by all the terms and conditions of this Agreement as may be amended; and the Membership Interest shall be so registered on the books of the LLC.

9.2     **Notices on Certificate**. Each LLC Certificate, now or hereafter held by a Member shall contain a legend in substantially in the following form:

"The transfer, gift, pledge or encumbrance of the Membership Interest represented by this Certificate (whether by deed or contract) is restricted under the terms of that

12    

certain Operating Agreement dated this ___ day of _____ 2010. A copy is on file in the LLC Minute Book."

9.3. **Right of First Refusal**. At least twenty (20) days prior to making a transfer of any Membership Interest to a third party, the Selling Member (the "Selling Member") shall first deliver an Offer Notice (the "Offer Notice") in writing to the other Member[s]. The Offer Notice shall be a good faith writing executed by the Selling Member setting forth: (i) the percentage of Membership Interest that the Selling Member proposes to sell; (ii) the name and address of the proposed transferee; (iii) the proposed purchase price, terms of payment and other material terms and conditions of the proposed transaction; and (iv) an estimate, in the Selling Member's reasonable judgment of the fair market value of any non-cash consideration offered by the proposed transferee. The Offer Notice shall be deemed to be an offer of the Membership Interests to the other Member, or other Members in pro rata proportion to their existing Membership Interest, on the same terms and conditions as proposed by the third party. The other Member or Members may elect to purchase all of the Membership Interest to be sold or transferred in the Offer Notice at the price and on the terms specified therein by delivering a written response of such election to the Selling Member within twenty (20) days after the giving of the Offer Notice (the "Election Period"). Should any Member elect not to purchase his, her or its pro rata share of the Selling Member's offered Interest, the remaining Member[s] shall have the right to purchase that Member's pro rata share as though it were an offer from the Selling Member. Should all of the Selling Member's offered Membership Interest not be purchased by the other Member or Members according to the terms of the Offer Notice, the Selling Member shall be entitled to consummate the sale or transfer to the third party as provided in the Offer Notice.

(a) If the other Member or Members, as the case may be, elect to purchase all of the Membership Interest to be sold or transferred from the Selling Member, the purchase of such Membership Interest shall be consummated as soon as practical, but in any event within sixty (60) days after the expiration of the Election Period. At the closing of the purchase of Membership Interest, the Selling Member shall provide representations and warranties as to his title to such Membership Interests and that there are no liens or encumbrances on such Membership Interests and shall sign a stock power and other document as may reasonably be requested by the LLC.

(b) On the Closing Date, in exchange for the delivery of the certificates representing all the Member's Interest being purchased, the other Member or Members shall pay the purchase price in accordance with the following terms:

13 

(i)     Fifty percent (50%) of the purchase price to the Selling Member by cash or cashier check with each purchasing Member paying its, his or her pro rata share; and

(ii)     Execution and delivery of a promissory note by each purchasing Member in the amount of the balance owed by that purchasing Member. The sum of all promissory notes shall equal the balance of the purchase price in favor of the Selling Member. The promissory note[s] shall be payable in equal quarter-annual installments of principal and interest for a period of five consecutive (5) years. The rate of interest on the promissory note[s] shall be equal to one (1) percentage point below the Prime Rate as set forth in the Wall Street Journal on the date the promissory note[s] is executed.   At the election of the Selling Member, the purchasing Members shall give a security interest in the Membership Interest purchased by the purchasing Member[s].

9.4     **Death.**   If a Member owns a Membership Interest in the LLC at his or her death, his or her Personal Representative or a Trustee, as the case may be, shall immediately offer for sale all, but not less than all, of the Membership Interest to the other Member[s], and the other Member[s] agrees to purchase the Membership Interest of the deceased Member upon the purchase price, terms and conditions as set forth in paragraph 9.5 and 9.6 herein. If the LLC has more than one surviving Member, each surviving Member shall purchase his, her or its pro rata share of the deceased Member's Membership Interest as set forth in Section 9.3

9.5     **Purchase Price, Terms and Conditions**.   Within forty five (45) days following the death of the Member, the Personal Representative or a Trustee of the deceased Member's estate and the other Member[s] shall attempt to agree on the fair market value of the deceased Member's Membership Interest. In the event the deceased Member's estate and the other Member[s] are unable to agree on the fair market value of the Membership Interest of the deceased Member, the Personal Representative or a Trustee of the deceased Member's estate shall within fifteen (15) days thereafter engage an independent certified appraiser to determine the fair market value of the assets of LLC taking into account the liabilities of the LLC, with no discount for lack of marketability. If the remaining Member[s] disagrees with the determined value, he, she or it may engage an independent certified appraiser to determine the fair market value. The average of the two (2) appraisers shall be controlling on the Member[s], his, her or its successor in interest, and the LLC. Each appraisal shall be conducted using generally accepted appraisal considerations and be based upon similar properties located within twenty miles of the realty owned by the LLC.

9.6     **Closing and Delivery of Membership Interests.**

(a)     **Place of Closing**.   The closing shall take place at the principal place of business of the LLC or such other place as the parties might mutually agree.

14     $\mathcal{4g}$ 08-01-10

(b)     **Time of Closing**.  The date of closing shall be thirty (30) days after the Personal Representative[s] of the deceased Member's estate, or the Trustee[s] of a Trust holding the deceased Member's Membership Interest, shall be obligated to sell the Membership Interest of the deceased Member to the surviving Member[s].

(c)     **Delivery of Membership Interests**.    At the closing, the Personal Representative or the Trustee, as the case may be, shall endorse and deliver the certificate(s) representing all the Membership Interest being sold to the surviving Member[s]. The LLC shall record the transfer of the Membership Interest in the records of the LLC and the purchase price shall be paid as follows:

(i)     If a surviving Member[s] has secured life insurance to fund the buyout of the deceased Member's Membership Interest, and if the death benefit exceeds the fair market value of the Membership Interest of the deceased Member, the surviving Member[s] shall pay the entire death benefit to the deceased Member's estate in exchange for the Membership Interest being sold. If the death benefit is less than the fair market value of the deceased Member's Membership Interest, the surviving Member[s] shall pay death benefit to the deceased Member's estate or Trust, as the case may be, and pay the balance through delivery of a promissory note payable as set forth in subparagraph (iii) below in exchange for the Membership Interest being sold. If a surviving Member[s] did not secure life insurance on the deceased Member's life, the fair market value of the Membership Interest of the deceased Member shall be purchased as follows:

(ii)     Fifty percent (50%) of the purchase price to the deceased Members estate in cash. Execution and delivery of a promissory note in the principal amount equal to the balance of the purchase price in favor of the deceased Members estate.

(iii)     The promissory note shall be payable in equal quarterly installments of principal and interest for a period of five (5) years.  The rate of interest on the Note shall be equal to one (1) point below the Prime Rate as set forth in the Wall Street Journal on the date the promissory note is executed.. At the election of the Personal Representative[s] of the deceased Member's Estate, or the Trustee[s] of a Trust holding the deceased Member's Membership Interest, the surviving Member[s] shall give a security interest in the Membership Interest purchased by the surviving Member[s].

## SECTION 10
## MISCELLANEOUS

10.1     **Interpretation**.  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Florida. Venue shall remain exclusively in Broward County, Florida.

15     *AG 08-01-10*

10.2 **Headings**. The paragraph headings contained herein are for reference purposes only and shall not in any way affect the meaning and interpretation of this Agreement.

10.3 **Binding Effect**. This Agreement shall be binding upon and shall operate for the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

10.4 **Entire Agreement**. This Agreement contains the entire understanding of the parties with respect to the subject matter herein, whether written or oral between the parties relating to the subject matter of this Agreement.

10.5 **Attorney Fees.** In the event of litigation the prevailing party shall be entitled to reasonable attorney's fees and costs.

10.6 **Severability**. The invalidity or unenforceability of any provision of this Agreement shall not affect the other provisions.

10.7 **Personal Property**. The Membership Interest of each Member shall be considered personal property.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date first above written.

_____        _____
                                         STUART B. KROST, M.D.

                                         _____
                                         HELDO GOMEZ, JR. M.D.

16    HG 08-01-10

# EXHIBIT "C"

**STUART B. KROST, M.D.**
**10394 LAREINA ROAD**
**DELRAY BEACH, FL. 33446**

August 2, 2010

Dr. Heldo Gomez, Jr.
4290 Professional Center Drive
Suite No. 105
Palm Beach Gardens, FL 33410

Re: Acquisition of Membership Interest in 7300 SRV, LLC.

Dear Dr. Gomez:

As a result of our discussions, I, Dr. Stuart Krost, hereby agree to sell and transfer to you, Dr. Heldo Gomez, Jr., a fifty percent [50%] membership interest in 7300 SRV, LLC [the "Company"] a Florida limited liability company, along the following lines:

1.       I will cause the Company to cancel my membership certificate that currently represents a fifty percent membership interest in the Company; and re-issue to you certificate #3 that represents a fifty percent [50%] membership interest in the Company.

2.       I represent and warrant as of the date of this letter agreement the following, and further understand that these representations and warranties are an inducement for you to purchase a fifty percent membership interest in the Company:
A.       The membership interest sold to you is fully paid, non-assessable and free and clear of all liens, encumbrances, restrictions and limitations.
B.       The Company is duly organized, validly existing, and in good standing under the laws of Florida; with full power and authority to own, lease and operate the real property now owned.
C.       There is no dispute, claim, action, suit or proceeding, pending or, to the best of my knowledge threatened against or affecting the Company or its assets.
D.       The Company has good, valid and marketable title to its assets, including that certain real property located at 7300 N.W. 5th Street, Plantation, Florida 33317 [the "real property"], and that no other person has any right or claim to the real property except as may exist under a lease agreement for less than five years' duration remaining and pursuant to the certain mortgage lien and security interest on the real property that is duly recorded in the official records of Broward County, Florida.
E.       The execution of this letter agreement and the closing of this transaction shall not conflict, violate or constitute a breach of any agreements, written or oral, violate the Articles of Organization of the Company nor violate Florida law.
F.       Broward County real estate taxes, sales taxes, tangible property taxes, penalties and interest, if any, special assessments, property insurance premiums and other assessable fees have been paid in full as of the end of 2009 on the real property and on personal property, if any, owned by the Company.
G.       The Company has good and marketable title to its assets, including that real property, that are free and clear of all liens, pledges, security interests, claims, restrictions, defects of title of any kind or nature, except for that certain mortgage lien and security interest on the real

property that is duly recorded in the official records of Broward County, Florida. The mortgage is not in arrears or default, and all monetary amounts due under it are current.

H.     The Company and its assets comply with all, and are not in violation of any laws or ordinances, or any order, rule or regulation of any federal, state, local, or other governmental agency or body applicable to its operations and assets.

I.     Except with respect to those tax returns and tax liabilities listed in Schedule A, all federal, state, and local tax returns and reports of Company, required by law to be filed, have been duly filed. All such returns were prepared and filed by Company in compliance with all applicable provisions of the Internal Revenue Code of 1986, as amended, (the "Code") the regulations thereunder and all applicable federal, state, and local statutes, rules, and regulations. Except as listed in Schedule A, all taxes upon Company, or any of its assets or income, which are reflected as due on such returns and reports have been paid. As far as I am aware, no audit or examination of any tax or tax return of Company is in progress, and there is no tax deficiency or liability existing, proposed or threatened against Company; and I am not aware of any basis for any examination, audit or investigation of or relating to any tax or tax return of Company or of any tax deficiency or liability of Company other than as a result of the tax liabilities listed on Schedule A. The term "tax" as used herein includes all federal, state, local, and foreign income taxes, premium taxes, and other taxes (including withholding taxes), levies, assessments, imposts, duties, license, registration, and other fees and related governmental charges, and interest and penalties, with respect thereto.

J.     I have good, marketable title and requisite authority to sell and transfer to you, free of any claim, demand or lien, a fifty percent membership interest in the Company, and following the closing you (or a company solely owned by you) and I (or a company solely owned by me) will together own 100% of the outstanding membership interest in the Company. Furthermore, I have all requisite power and authority to enter into the agreement and carry out the transactions contemplated hereby. The execution, delivery and performance of this agreement by me and the Company has been duly and validly authorized and approved by all requisite action. No other action is or will be necessary to authorize this agreement or the transactions contemplated hereby. This agreement constitutes a legal, valid, and binding obligation enforceable against me in accordance with its terms. Neither the execution and delivery of this agreement, nor the consummation of the transactions contemplated hereby, nor the compliance with any of the provisions by me or the Company hereof will:

1) conflict with, or result in a breach of, any provision of the Company's Articles of Organization, including any amendments thereto; or

2) result in a violation of or default under (or give rise to any right of termination, cancellation or acceleration, or any right to make any material change in any of the terms, conditions, or provisions of) any note, bond, mortgage, indenture, license, agreement, treaty, lease, or other agreement, instrument or obligation to which I or the Company are a party, or by which I or the Company, or any of our respective properties or assets may be bound; or

3) violate any order, writ, injunction, decree, statute, rule, or regulation applicable to me or the Company, or any of our respective properties or assets.

3.     The Company and I agree to indemnify and forever hold you, your personal representatives, heirs and assigns, harmless with respect to all claims, demands, causes of action, deficiencies, damages, liabilities, losses, taxes, penalties, interest, costs and expenses, including reasonable attorney's fees, in connection with the operation or management of the Company for the period prior to the date of this letter agreement. This includes any claims or demands against the Company that result in the diminution of its market value.

4/9 08-01-10

4.      In consideration for the transfer of my fifty percent [50%] membership interest in the Company, you agree to pay me the total purchase price of Five Hundred Thousand [$500,000.00] Dollars, in cash or cashier check.

5.      This letter agreement contains the entire understanding of the parties and all prior understandings and agreements, whether written or oral, are merged into this letter agreement.

6.      This letter agreement shall be binding upon the parties and their respective heirs, legal representatives, successors and assigns. This agreement shall be enforced under Florida law and venue is in Broward County, Florida.

Upon execution of the letter agreement by the parties, I will transfer to you a fifty percent [50%] membership interest in the Company, and further agree to your appointment as a managing member of the Company in exchange for your payment of Five Hundred Thousand Dollars to me.

Very Truly Yours,

STUART B. KROST

AGREED TO AND ACCEPTED THIS 1 DAY OF AUGUST, 2010.

_____

HELDO GOMEZ, JR., Individually

AGREED TO AND ACCEPTED THIS 1 DAY OF AUGUST, 2010 BY THE COMPANY

_____

STUART B. KROST, MANAGING MEMBER, ON BEHALF OF THE COMPANY